(88 South. 392)

No. 23185.

STATE ex rel. NEWCOMB REALTY CO. v. CITY OF NEW ORLEANS.

(April 4, 1921.   Rehearing Denied May 2, 1921.)

*(Syllabus by Editorial Staff.)*

**Municipal corporations ⬳444—Notice of improvement of upper side of avenue did not bind property owners on lower side.**

Under New Orleans Charter, § 44, as amended by Act No. 23 of 1914, where an avenue was paved on the lower side except at certain intersections, and after the work had been completed the city advertised its intention to pave the upper side of the avenue and did so, such pavement including the intersections on the lower side of the avenue, a property owner on the lower side was not chargeable with the work on the intersections on the lower side, inasmuch as there was no notice that any portion of the lower side was to be paved, for the notice that the upper side would be paved did not throw upon property owners on the lower side the duty of examining the contracts for the paving together with plans therefor, although from them it might have been discovered that the work was to cover not only the upper side but the intersections on the lower side.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by the State, on the relation of the Newcomb Realty Company, against the City of New Orleans.   From judgment for respondent, relator appeals.   Reversed and rendered.

J. Zach Spearing, of New Orleans, for appellant.

Ivy G. Kittredge, City Atty., and W. Catesby Jones, Asst. City Atty., both of New Orleans, for appellee.

SOMMERVILLE, J.   The relator, owner of certain squares of ground in Napoleon avenue, in the city of New Orleans, fronting on the lower side of that avenue, sues the city of New Orleans and the recorder of mortgages to cancel and erase certain assessments, taxes, liens, and privileges recorded against its property for the paving of Napoleon avenue on the upper side of that avenue with Trinidad Lake pitch asphalt.

It appears that the lower side of Napoleon avenue was paved with bitulithic pavement in the year 1913, with the exception of certain intersections on the neutral ground on that side of the street.   The property owners were to pay, and relator did pay, two-thirds of the cost of the pavement along that side of the avenue, and the city paid for the remaining one-third, and for all of the intersections which were paved.   It further appears from the evidence in this case that the reason for not paving the intersections on the neutral ground on the lower side of the avenue was because the city was short of funds and could not pay for same.

After the work on the lower side of the avenue had been fully completed, the city advertised its intention to pave the upper side of Napoleon avenue, and called for bids for such work.   The law had been changed in 1914 (Act 23, p. 64), so as to put the entire cost of paving, including intersections, upon property holders, and it gave to the property holders the privilege of naming the pavement to be laid in front of their premises, and they named Trinidad Lake pitch asphalt; and the pavement of the intersections, including the intersections on the lower side of the neutral ground, were paved with that material.   And it is the cost of this work on the intersections of the neutral ground, lower side, that plaintiff is charged with.

The city answered that Napoleon avenue is one street, although it has a neutral ground in the center, and that the notice to pave the upper side of the avenue, and the contracts for that purpose, included the lower side of the avenue, and that relator is bound for the pavement of the intersections on the lower side.

There was judgment in favor of respondents, and relator has appealed.

In imposing upon property holders assessments and taxes for paving the law must be strictly complied with by the authorities making such assessments and levies to bind the property of the owners. The law provided, in section 44 of the charter of the city of New Orleans, as amended by Act 23, 1914:

"The commission may, upon its own motion, provide for the paving of any street, or portion thereof, in the city of New Orleans, after notice of its intention so to do shall have been published in the official journal of the city twice a week for two (2) weeks," etc.

In this instance the commission council did not publish a notice that the portion of Napoleon avenue on the lower side was to be paved. And the property holders on that side of the avenue were not given any notice of any such intention.

The city attorney quoted section 42 of the city charter, defining what a street is, where it is said:

"To embrace any and all divisions and subdivisions of such way from property line to property line, including sidewalks or banquettes, roadways, neutral grounds, esplanades, center strips, intersections, and other divisions and subdivisions, as such divisions or subdivisions exist or may at any time be established or reestablished by the city of New Orleans."

And the term "roadway" is defined in the charter:

"To mean and embrace neutral grounds, center strips, intersections, and all other divisions and subdivisions of streets except sidewalks and banquettes, as established or reestablished at any time by the city of New Orleans."

But, these definitions are general, and the term "street" is made to include sidewalks or banquettes, extending from property line to property line, when the evidence shows that the advertisement to pave Napoleon avenue, upper side, with Trinidad Lake pitch asphalt, was not extended to cover the sidewalks, or banquettes. And when the city at-

torney further contends that the paving of the "upper side" of the avenue with pitch lake asphalt covers the "lower side," after the lower side had been paved with bitulithic only the year before, he claims entirely too much and he loses sight of the city charter in which the commission council is authorized to pave any street, or portion thereof; and in giving notice and calling for bids to pave that portion of Napoleon avenue on the uptown side, the city had to comply with the law, and give notice of its intention to pave that portion, and it gave no notice and it made no contract to pave any portion of the lower side of the avenue.

The property owners on the lower side of Napoleon avenue were not called upon to examine the various ordinances and contracts entered into by the city of New Orleans for paving the upper side of the avenue.

And in the ordinances and contracts which are in evidence in this case it is nowhere stated that any portion of the lower side of the avenue was to be paved. On the contrary, the only portion of the avenue mentioned in the notices to pave and in the contracts was the upper portion.

The city attorney argues that, inasmuch as some of the ordinances simply mentioned Napoleon avenue without reference to the "upper side," it was the duty of relator to have examined these ordinances together with the contracts for the paving and subsurface work, which contracts, by the way, refer only to the upper side of the avenue, and they would have learned by survey or measurement that some work was contemplated that would more than have covered the upper side of the avenue. The city engineer in testifying said that this information could have been arrived at in the following way:

"In other words, the items of work that were executed, and which are now contested by the

Newcomb Realty Company, were a part of that contract as evidenced by the quantities of these items of work, because if there had not been included those items of work would have been far less than it was. The plans further show this work was agreed upon, and the plans are the essentials of the contract, because the plans show many details which are not covered in the language of the contract."

The plans are not in evidence, and we do not therefore know what they may show, and we think it altogether unreasonable for property owners to be called upon to examine contracts for paving where the required notice is not given, and it is not shown that the paving is in front of their premises.

Relator is therefore not estopped to contest the validity and genuineness of the assessments, taxes, and inscriptions involved, and the plea of prescription of one year, filed under paragraph 15, § 44, Act 69, 1916, p. 180, has no application here. They are both overruled.

Relator cannot be said to have stood idly by while these intersections were being paved without protesting. The city had the right to do this work at its own expense, and it did it without notice of any kind to relator.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of relator, Newcomb Realty Company, and against respondent; that the alternative writ of mandamus be made peremptory; and that respondents be ordered to cancel and annul the assessments, charges, and taxes against relator's property as described in the petition in this case, and to cancel and erase and to have canceled and erased the inscriptions thereof in the books of the city of New Orleans and in the books of the recorder of mortgages, with costs.

DAWKINS, J., takes no part.